FORI AUTOMATION, INC., Plaintiff,

v.

DURR SYSTEMS, INC., Defendant.

Case No. 07–12527.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 10, 2008.

Andrew M. Grove, Richard W. Hoffmann, Reising, Ethington, Troy, MI, for Plaintiff.

Gregory D. Degrazia, Melanie T. Frazier, Robert E. Graziani, Thomas H. Walters, Howard & Howard, Bloomfield Hills, MI, for Defendant.

*MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES AND COUNTERCLAIM*

AVERN COHN, District Judge.

## I. Introduction

This is a patent case involving United States Patent No. 5,040,303 for a Toe Adjustment Method and Apparatus (the '303 patent), issued to Arthur Koerner on March 8, 1990, and assigned to plaintiff Fori Automation, Inc. (Fori). The '303 patent covers an automatic machine for adjusting the toe angle of the wheels of a motor vehicle as part of an automotive assembly line, and associated method.

Fori complains that defendant Durr Systems, Inc., (Durr) has infringed the '303 patent. The *Markman* phase of the case is completed (see *Markman* Order dkt. 34). Trial is scheduled for August 10, 2009.

Before the Court is Durr's motion to amend its affirmative defenses and counterclaim in order to reinstate a claim of inequitable conduct. A hearing on the motion was held November 5, 2008. For the reasons below, the motion will be denied without prejudice. As will be explained, the evidence upon which Durr bases the proposed amendment is not material to the claim of inequitable conduct.

## II. Background

Durr initially defended affirmatively against Fori's claim of infringement with defenses of (1) noninfringement, (2) invalidity, (3) inequitable conduct, (4) unclean hands, (5) failure to place statutory notice on product, (6) failure to provide sufficient notice, (7) estoppel, (8) laches, and (9) failure to state a claim upon which relief can be granted.

Durr also counterclaimed for a declaratory judgment of (I) noninfringement, (II) invalidity, and (III) unenforceability.

Accepting the word of Fori's counsel that inequitable conduct did not exist, Durr consented to dismissal of this claim without prejudice. Now, however, Durr moves to amend its defense to include a claim of inequitable conduct based upon its discovery of a paper entitled, "Increased Quality Through Static Wheel Alignment and Automatic Toe Setting," written by Stephan Wiesen of Fori and published in 1985 by the Society of Automotive Engineers (SAE) as SAE Technical Paper Series Article No. 850220 (the Publication). Durr says that the Publication is material and was not provided to the patent examiner during prosecution of the '303 patent.

During the course of discovery, Durr received a copy of the Publication, which Durr describes as including "redacted or blackened out" photographs. Durr then obtained a complete copy of the Publication from the SAE and says that the paper displays "clear photos of a single head wrench, ... the subject of the '303 patent." Durr cites the Publication's statement that "a sophisticated tie rod adjustment tool can dramatically improve on [the] situation whenever the adjustment tool and the nut runner for the jam nut are integrated into one tooling." Durr points out that incorporating the adjustment tool and nut runner into a single tool was undisputedly material to prosecution of the

'303 patent. Durr finds support in the Court's *Markman* decision, which stated, "[b]ecause the use of a single wrench is a significant innovation, claim 13 is patentable over the '327 patent irrespective of the rotary encoder." *Markman* Order at p. 13.

Fori responds that the amendment should be denied because Durr failed to plead inequitable conduct with sufficient particularity and because the amendment would be futile.

## III. Legal Standard

### A. Motion to Amend Pleading

A party may amend its pleadings after twenty days "only by leave of court or by written consent of the adverse party" and leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision of whether to permit the amendment is at the discretion of the trial court. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–32, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Estes v. Ky. Util. Co.*, 636 F.2d 1131, 1133 (6th Cir.1980). This discretion, however, is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.1987) (citation omitted).

■ In determining whether to permit amendment, the district court may consider undue delay that would prejudice the other party, bad faith, or the futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1353 (Fed.Cir.2006). An amendment is futile if the amended pleading would not withstand a motion to dismiss. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 743 (6th Cir.2002). To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir.2005). "In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint. . . ." *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir.2008) (internal quotation marks omitted) (quoting *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir.2005)).

### B. Inequitable Conduct

■ "A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed.Cir.2007) (internal quotation marks omitted) (quoting *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed.Cir.2006)).

■ Intent and materiality are questions of fact requiring clear and convincing evidence. *Research Corp. Techs., Inc. v. Microsoft Corp.*, 536 F.3d 1247, 1251–52 (Fed.Cir.2008). "To find a patent unenforceable for inequitable conduct, there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the PTO." *Id.* at 1252. "The first prong, *materiality*, is a required element of the inequitable conduct analysis." *Id.*

Information is material as prior art under 35 U.S.C. § 102 when it is not cumulative to information of record and it establishes a prima facie case of unpatentability of a claim. 37 C.F.R. § 1.56(b). A prima

facie case of unpatentability is established when the information makes it more likely than not that a claim is unpatentable, before consideration is given to any evidence submitted in an attempt to establish a contrary conclusion. *Id.; see also Merck & Co. v. Danbury Pharmacal, Inc.,* 873 F.2d 1418, 1421 (Fed.Cir.1989) ("Materiality may be established ... by a showing that a reasonable examiner would consider the withheld prior art important in deciding whether to issue the patent.").

## IV. Analysis

### A. Sufficiency of the Pleadings

Fori says that Durr fails to plead with sufficient particularity to support a claim of inequitable conduct. *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.,* 482 F.3d 1347, 1356 (Fed.Cir.2007).

■ Durr specifically alleges inequitable conduct by "the named inventors and other persons involved" in the '303 patent prosecution for failure to disclose "material prior art," specifically identified as the Publication, with the intent to mislead and deceive the PTO. This is sufficient. It is not necessary that Durr include evidence of materiality or intent within the four corners of its counterclaim.

Nevertheless, Durr has a good-faith obligation to conduct a reasonably careful review of the Publication and Fori's response and to evaluate the amendment for likelihood of futility as discussed below.

### B. Futility

#### 1.

Fori contends that Durr's amendment is futile in four areas: materiality, knowledge, intent, and subject matter. Only the first, materiality, requires the Court's consideration. Fori argues that, contrary to Durr's characterization, the Publication does not show or describe a single wrench that engages both the tie rod and the jam nut. Rather, Fori points out, the Publication discloses a tie rod adjustment tool and a separate nut runner integrated into one tooling.

Fori also says the Publication is cumulative to United States Patent No. 4,674,366 for an Apparatus for Adjusting the Tie Rod in an Automotive Vehicle, issued to Gerhard Lauer et al. on June 23, 1987 (Lauer).

#### 2.

■ Durr cannot establish a prima facie case of unpatentability because the Publication does not make it more likely than not that Claim 13 is unpatentable. Furthermore, the Publication is cumulative to Lauer.

Durr says "the adjustment tool and the nut runner for the jam nut are integrated into *one tooling* " (emphasis added) according to the Publication and goes on to argue, "It cannot be disputed that incorporating the adjustment tool and nut runner for the jam nut into *one tool* was material to prosecution of the '303 patent" (emphasis added).

The Court observes initially that "one tooling" does not mean "one tool." A tooling is "the planning and arrangement of tools for a particular manufacturing process." tooling (definition 2b), *Dictionary.com Unabridged* (Random House v. 1.1), http://dictionary.reference.com/browse/tooling (last visited Oct. 16, 2008).

Claim 13 of the '303 patent recites:

13. The method of adjusting toe angle using a wheel alignment machine having a power wrench for adjusting toe angle by rotating a tie rod having a rotatable wrench engageable adjustment portion and a jam nut axially spaced from the adjustment portion to lock the rod against rotation, said method comprising the steps of,

applying the power wrench to the tie rod between the jam nut and the adjustment portion,

measuring the toe angle,

producing a wrench control signal in response to the measured angle,

shifting the wrench axially along the rod to engage the adjustment portion,

rotating the wrench under control of the wrench control signal to adjust the tie rod until a correct toe angle is obtained,

shifting the wrench axially along the rod without removal of the wrench from the rod to engage the jam nut, and

rotating the wrench to tighten the jam nut, thereby locking the adjustment portion against further adjustment.

The same head—one tool—is shifted axially to selectively engage and rotate both the tie rod and the jam nut. The wrench head socket 104 comprises a cavity 103 configured to fit the hex part 102 of the tie rod 34 and a cavity 105 configured to fit the jam nut 100. Col. 4, ll. 35–41; figs. 4, 5. Figures 4 and 5 are attached as Exhibit A.

By contrast, the Publication discloses on pages 4–5:

Automatic Toe Setting:

The main advantages of automatic toe setting are the savings in manpower and improvement in work environment. The operator, however, is an important factor determining the quality of the toe-setting process. One part of the tolerance field must be given to the operator to adjust the tie rod. This "window" of tolerance is required *as the tie rod twists while the jam nut is locked.* A sophisticated tie rod adjustment tool can dramatically improve on that situation whenever the adjustment tool and the nutrunner for the jam nut are integrated in one tooling.

As described in the previous paragraph [section entitled, "Four–Wheel Alignment Machines"], a clamping fixture has tightly clamped and accurately centralized the vehicle. As a result, the adjustment tool can easily "find" the tie rods. Before any adjustment is done, the tools set toe on all wheels to "toe-out". *After the computer has determined the final toe adjustment values, the tools twist the tie rod until the correct toe value is reached.* As this value is reached by twisting in only one direction, backlash in the thread of the tie rod does not affect the final adjustment. *The tie rod remains clamped when the nutrunners lock the jam nuts.* This prevents additional rotation. Once toe is set correctly, it remains in that position . . . . [all emphases added]

According to the Publication's description, the tie rod adjustment tool twists the tie rod, which remains clamped by the adjustment tool while the nut runners lock the jam nuts. Further, only rotational motion is described, not axial movement along the tie rod.

### 3.

In its reply, Durr ignores the actual text of the Publication, the fact that the Publication's photograph shows two different tools, and Fori's clear explanation of the two tools. Durr states that the Publication discloses " 'the adjustment tool and the nutrunner for the same [sic] nut are integrated in one tooling (wrench) [sic]' " (purporting to quote the Publication). This is incorrect. The Publication discloses "the adjustment tool and the nutrunner for the jam nut are integrated in one tooling." Durr adds the parenthetical "(wrench)."

Further, instead of addressing the merits of Fori's response, Durr insists that "the Figure on page 4 of [the Publication] shows the same, or similar wrench shown in Figure 8 of the '303 patent as seen below:" Durr ignores the tie rod adjustment tool in the Publication's photograph, circling only the nut runner and pointing from the nut runner to an unidentified

drawing and to Fig. 8 of the '303 patent, as if there is some significance among the three. Page 4 of Durr's reply brief showing the three figures is attached as Exhibit B. In the motion hearing, Durr said that the unidentified drawing is its artist's rendition of the Publication's photograph. If so, it is a very poor rendition indeed. It depicts only one tool, not two as shown in the photograph. Furthermore, as Fori pointed out in the hearing, the artist's rendition appears to show a hex-shaped tie rod, for which there is no support in the Publication.

Durr argues that in the Publication, "one tooling" means "one wrench." This is simply wrong. It is plain, from the Publication's description alone and from the photograph alone, that "one tooling" refers to a combination of tools and, most importantly, that the tie rod adjustment tool and the nut runners of the Publication are two different tools. The Publication does not make more likely than not the unpatentability of Claim 13, whose single wrench both adjusts the tie rod and runs the nut.

### 4.

Moreover, the Publication is cumulative to Lauer, a prior art reference of record relating to the '303 patent that, as described in the Abstract, teaches:

> The tie rod in the steering system of an automotive vehicle is adjusted by an apparatus whose housing contains two transmissions, one to rotate the tie rod and the other to rotate the lock nut which normally holds the tie rod in a selected angular position. The second transmission can rotate a wrench for the lock nut, and this wrench is slotted to allow for entry of a portion of the tie rod into its socket. A carriage is reciprocable in the housing to shift the wrench axially so that the socket of the wrench can receive or can be moved away from the lock nut.

Three "friction wheels 3, 4 and 5 serve as a means for rotating the component 22 [tie rod]." Lauer col. 4, ll. 6–7; figs. 1, 4. A separate "wrench 7 ... serves to transmit torque to a lock nut 25." *Id.* col. 4, ll. 1–3; fig. 4. Figures 1 and 4 are attached as, respectively, Exhibits C and D.

Similar to Lauer, the Publication discloses using two separate tools for the two different tasks of rotating the tie rod and running the nut.

### 5.

Because the evidence upon which Durr relies is not material to the allegations it asks to include in its counterclaim, there is no set of facts Durr can prove in support of its claim of inequitable conduct that would entitle it to relief. *Ley,* 543 F.3d at 805–06. Durr fails to meet its threshold burden. The Court has no need to address Fori's remaining arguments concerning knowledge, intent, and subject matter. However, it is worthwhile noting that the Federal Circuit recently observed that publication to the scientific community is "an act inconsistent with intent to conceal" information from the PTO. *Research Corp. Techs.,* 536 F.3d at 1252.

### V.  Conclusion

The tooling described in the Publication on its face includes two separate tools for the tasks of twisting and clamping the tie rod and rotating the jam nut. In clear contrast, Claim 13 of the '303 patent recites one wrench for rotating both the tie rod and the jam nut. The Court has already found this to be a "salient difference" and a "significant innovation." *Markman* Order at p. 13. Because the Publication is not material to Durr's proposed affirmative defenses and counterclaim of inequitable conduct, Durr's motion to amend is DENIED without prejudice.

SO ORDERED.

Fig.5

Fig.5A

Fig.4

874

Exhibit B

Plaintiff argued in the Markman Hearing and this Court ruled that the disputed claim 13 includes <u>static wheel alignment</u> and that the patentable <u>novelty was the use of a single wrench</u>. Now Plaintiff argues that an article, written by plaintiff title "Increased Quality through **Static Wheel alignment** and Automatic Toe Setting" and disclosing, "…**the adjustment tool and the nutrunner for the same nut are integrated in one tooling (wrench).**" (emphasis added) is somehow not material. Furthermore, the Figure on page 4 of the SAE article shows the same, or similar wrench shown in Figure 8 of the '303 Patent as seen below:

A sophisticated tie rod adjustment tool can dramatically improve on that situation whenever the adjustment tool and the nutrunner for the jam nut are integrated in one tooling.

Adjusted Tool And Nutrunner Integrated Into One Tooling

Slide For Shifting Wrench Axially

*Fig.8*

This differs from what is disclosed in United States Patent No. 4,674,366 to Lauer rendering plaintiff's argument that the SAE article is merely cumulative mute. It is apparent that