NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AKEVA L.L.C.,**
*Counterclaimant-Appellant*

v.

**NIKE, INC., ADIDAS AMERICA, INC.**
*Counter-Defendants-Appellees*

---

2019-2249

---

Appeal from the United States District Court for the Middle District of North Carolina in No. 1:09-cv-00135-LCB-JEP, Judge Loretta C. Biggs.

---

Decided:  July 16, 2020

---

MATIAS FERRARIO, Kilpatrick Townsend & Stockton LLP, Winston-Salem, NC, for counter-defendant-appellee Adidas America, Inc.  Also represented by MITCHELL G. STOCKWELL, Atlanta, GA.

CHRISTOPHER J. RENK, Banner & Witcoff, Ltd., Chicago, IL, for counter-defendant-appellee Nike, Inc.  Also represented by MICHAEL JOSEPH HARRIS, JANICE V. MITRIUS, VICTORIA R. M. WEBB, KEVIN DAM.

DANIEL A. KENT, Kent & Risley, LLC, Alpharetta, GA, for counterclaimant-appellant. Also represented by STEPHEN ROBERT RISLEY, CORTNEY ALEXANDER, OLIVIA MARBUTT, SAMUEL NAJIM.

_____

Before NEWMAN, O'MALLEY, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

Akeva L.L.C. (Akeva) owns a portfolio of footwear patents including U.S. Patent Nos. 5,560,126 ('126 patent); 6,966,130 ('130 patent); 7,114,269 ('269 patent); 5380,350 ('350 patent); and 7,540,099 ('099 patent); (collectively, the Asserted Patents). The '130, '269, '350, and '099 patents all claim priority to the '126 patent and are referred to as the Continuation Patents. Asics filed for declaratory judgment that it does not infringe the Asserted Patents and, in response, Akeva countersued for patent infringement. Akeva also added Nike, Inc., adidas America, Inc., New Balance Athletic Shoe, Inc., and Puma North America, Inc. to the suit alleging infringement of certain claims of the Asserted Patents. The district court granted the Defendants summary judgment of no infringement as to the '126 patent, and invalidity as to the asserted claims of the Continuation Patents. Akeva now appeals. Because the district court correctly construed the claim term "rear sole secured" to exclude conventional fixed rear soles and also properly concluded that the Continuation Patents are not entitled to claim priority to the '126 patent, we *affirm* the district court's grant of summary judgment.

## BACKGROUND

The Asserted Patents describe improvements to athletic shoe rear soles and midsoles. The specification of the '126 patent describes the problem of rear sole wear in which "the heel typically wears out much faster than the rest of the athletic shoe, thus requiring replacement of the entire shoe even though the bulk of the shoe is still in

satisfactory condition." '126 patent col. 1 ll. 30–33. "Another problem associated with outsole wear is midsole compression." *Id.* at col. 1 ll. 34–35. The '126 patent specification explains that "after repeated use, the midsole is compressed, . . . thereby causing it to lose its cushioning effect." *Id.* at col. 1 ll. 37–39. "[I]n accordance with the purpose of the invention," the Summary of the Invention describes a shoe having "a rear sole detachably secured or rotatably mounted to the heel support." *Id.* at col. 3 ll. 25–42. The specification describes that midsole compression can be alleviated by placing a graphite insert into the midsole. *Id.* at col. 3 ll. 34–42. The Abstract likewise describes the invention as "[a] shoe includ[ing] a heel support for receiving a rotatable and replaceable rear sole to provide longer wear. The shoe may also include a graphite insert supported by the heel support between the heel and the rear sole to reduce midsole compression and provide additional spring." '126 patent Abstract. The '126 patent thus discloses a solution to the problem with a conventional fixed rear sole by replacing it with either a detachable rear sole that can be replaced or a rear sole that is rotatable.

The Continuation Patents claim priority to the '126 patent through a chain of intervening continuations, including the previously litigated U.S. Patent No. 6,604,300 ('300 patent). The '300 patent is a continuation-in-part of the '126 patent. In a previous appeal, we found that the '300 patent specification disclaimed conventional fixed rear soles, thus preventing the claims of the '300 patent from encompassing shoes with a conventional fixed rear sole. *Akeva L.L.C. v. Adidas-Salomon AG*, 208 F. App'x 861, 864–65 (Fed. Cir. 2006) (*Akeva I*). In keeping with the disclosure of the '300 patent, we construed the claim term "rear sole secured"—the same disputed claim term we confront here for the '126 patent—to mean "selectively or permanently fastened, but not permanently-fixed into position." *Id.* at 864. More specifically, this means that the "rear soles that can be rotated or replaced," but they are

not permanently fixed in position. *Id.* at 865. As filed, the '296 continuation patent had the same specification as the '300 patent, including the disclaimer, but Akeva amended the specification during prosecution to circumvent the disclaimer language relied on in *Akeva I* and filed an Information Disclosure Statement (IDS) disclosing our decision in *Akeva I* and a statement explaining that it intended to rescind that disclaimer from the '296 patent. *Asics Am. Corp. v. Akeva L.L.C.*, 1:09–cv–00135, at 29–30 (M.D.N.C. Mar. 29, 2019) (*Asics*). The remaining Continuation Patents are continuations of the '296 patent and either included these amendments at filing or similarly amended the specification during prosecution. *Id.*

In the present case, all of the accused shoes have a conventional fixed rear sole, and, in a motion for summary judgment, Defendants argued that the term "rear sole secured" in claim 25 of the '126 patent, just as with the claims of the '300 patent asserted in *Akeva I*, could not include a shoe with a conventional fixed rear sole. Claim 25 states:

> 25. A shoe comprising:
>
>> an upper having a heel region;
>>
>> a *rear sole secured* below the heel region of the upper; and
>>
>> a flexible plate having upper and lower surfaces and supported between at least a portion of the rear sole and at least a portion of the heel region of the upper, peripheral edges of the plate being restrained from movement relative to an interior portion of the plate in a direction substantially perpendicular to a major axis of the shoe so that the interior portion of the plate is deflectable relative to the peripheral edges in a direction substantially perpendicular to the major axis of the shoe.

'126 patent claim 25 (emphasis added).

As an initial matter, the district court in the present case declined to apply collateral estoppel against Akeva's proposed construction, in light of the final decision in *Akeva I* as to the meaning of "rear sole secured," because the '300 patent is a continuation-in-part of the '126 patent and the patents, although very similar in content, do not share an identical written description. *Asics* at 4. Nevertheless, after thoroughly reviewing the '126 patent specification, the district court found that the '126 patent disclaimed conventional fixed rear soles from its invention, concluding that "rear sole secured," in the context of the '126 patent, means "rear sole selectively or permanently fastened, but not permanently fixed into position." *See id.* at 18–19. In other words, the rear sole could be (1) detachable or (2) attached and rotatable, but a conventional fixed rear sole is not within the scope of the claim term. The district court thus entered summary judgment that Defendants did not infringe the '126 patent.

As for the Continuation Patents, the district court recognized that Akeva had amended the specifications to circumvent the disclaimer language this court relied on for the '300 patent in deciding *Akeva I*, in an effort to claim shoes having conventional fixed rear soles. *Id.* at 28–33. It was undisputed, however, that if the Continuation Patents were not entitled to claim priority to the '126 patent, then the asserted claims would be invalid under 35 U.S.C. § 102 due to Nike's sales of its accused shoes with conventional fixed rear soles in the United States more than one year prior to the Continuation Patents' filing dates. *Id.* at 35–36. In light of this court's *Akeva I* ruling that the '300 patent specification disclaimed and disavowed conventional fixed rear sole shoes as well as the district court's own ruling that the '126 patent specification also disclaimed and disavowed conventional fixed rear sole shoes, the district court concluded that Akeva's amendments to the specifications of the Continuation Patents added new matter by

broadening the scope of the disclosure and therefore they could not claim priority to the '126 patent. *Id.* at 29–33. As a result, because Nike's accused product was on sale before the filing date of the Continuation Patents, the Continuation Patents were "invalid under 35 U.S.C. § 102 to the extent that they purport to include shoes with" conventional fixed rear soles. *Id.* at 36.

Akeva timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I.

Claim construction is as a question of law that may involve underlying fact inquiries. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015); *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1381 (Fed. Cir. 2016). This court reviews the district court's claim construction based solely on intrinsic evidence de novo, and reviews subsidiary fact findings for clear error. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1337 (Fed. Cir. 2015).

Claim terms are given their ordinary and customary meaning, as would be understood by a person of ordinary skill in the art at the time of invention in light of the claim language, the specification, and prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–17 (Fed. Cir. 2005). "A claim term should be given its ordinary meaning in the pertinent context, unless the patentee has made clear its adoption of a different definition or otherwise disclaimed that meaning." *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 734 (Fed. Cir. 2014). The patent may provide such a clear intent either expressly or by implication. *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016).

The crux of the claim construction dispute in this appeal is similar to an issue we confronted in *Akeva I* as to the '300 patent: whether the claim term "rear sole secured,"

this time in the context of the '126 patent, encompasses conventional fixed rear soles. We agree with the district court that the '126 patent specification, like the related '300 patent, clearly disclaims conventional rear fixed soles and therefore affirm its claim construction. As we stated in *SciMed Life Systems Inc. v. Advanced Cardiovascular Systems Inc.*, "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent." 242 F.3d 1337, 1341 (Fed. Cir. 2001); *Ancora,* 744 F.3d at 734.

As discussed above, numerous statements in the specification make it clear a conventional fixed rear sole is not within the scope of the invention. '126 patent col. 1 l. 9–col. 3 l. 43. Under Field of Invention, the patent describes "[t]he present invention" as "relat[ing] generally to an improved rear sole for footwear and, more particularly, to a rear sole for an athletic shoe with an extended and more versatile life and better performance in terms of cushioning and spring." *Id.* at col. 1 ll. 9–12. The Background of the Invention section observes that, with conventional athletic shoes, "the sole is attached to the upper as a one-piece structure, with the rear sole being integral with the forward sole." *Id.* at col. 1 ll. 14–22. The Background then disparages this conventional design for two reasons: (1) outsole wear, particularly in the heel, "requiring replacement of the entire shoe even though the bulk of the shoe is still in satisfactory condition," and (2) midsole compression where the midsole, after repeated use, loses its cushioning effect. *Id.* at col. 1 ll. 23–42. The Background asserts that "[t]o date, there is nothing in the art to address the combined problems of midsole compression and outsole wear in athletic shoes, and these problems remain especially severe in the heel area of such shoes." *Id.* at col. 1 ll. 52–55.

The Summary of the Invention states that the invention is a shoe that "includes an upper, a forward sole attached to the upper, a heel support attached to the upper,

and *a rear sole detachably secured or rotatably mounted to the heel support.*" *Id.* at col. 3 ll. 25–30 (emphasis added). The forward sole and heel support are thus conventionally attached to the upper, but the rear sole is not. In "another aspect" of the invention, the Summary describes a shoe with a heel support defining a "recess" and the rear sole, rather than being conventionally fixed to the shoe, is instead "receivable in the recess of the heel support . . . ." *Id.* at col. 1 ll. 34–42. The Abstract likewise focuses on the rear sole being replaceable or rotatable, by describing the invention as a shoe that "includes a heel support for receiving a rotatable and replaceable rear sole to provide longer wear." *Id.* at Abstract.

The Description of the Preferred Embodiments section discloses a multitude of embodiments illustrated across 36 figures, with each embodiment requiring either a detachable or rotatable rear sole that is received within a recess of the heel support, as the district court correctly found. *Asics* at 14. For example, for the first disclosed embodiment, "[t]he rear sole 28 is detachable from the heel support 26." '126 patent col. 5 l. 42. Alternatively, "[t]he rear sole 28 can also be rotatably mounted on the heel support 26." *Id.* at col. 5 ll. 47–48. "The general features of the first embodiment," according to the patent, "will apply to *all embodiments* unless otherwise noted." *Id.* at col. 8 ll. 9–12 (emphasis added). The patent then stresses again that the purpose of the detachable or rotatable rear sole is to compensate for rear sole wear as well providing the user different performance characteristics:

> The ability to remove the rear sole serves several purposes. The user can rotate and/or invert the rear sole to relocate the worn section to a less critical area of the sole, and eventually replace the rear sole altogether when the sole is excessively worn. Additional longevity in wear may also be achieved by interchanging removable rear soles as between the right and left shoes, which typically exhibit

> opposite wear patterns. However, some users will prefer to change the rear soles not because of adverse wear patterns, but because of a desire for different performance characteristics.

*Id.* at col. 7 ll. 50–59. Moreover, the specification also contemplates a rear sole that is rotatable without also being removable. *Id.* at col. 8 ll. 32–34 ("[T]he same benefits of this invention can be achieved if only a portion of the rear sole is rotatable or removable."); col. 8 ll. 37–40 ("For example, this invention includes the embodiment whereby a portion of the rear sole, e.g., the center area, remains stationary while the periphery of the ground-engaging surface rotates and/or is detachable.").

The overwhelming focus of the remainder of the written description is devoted to different ways of securing the rear sole within the recess of the heel support, whether by press-fitting, protrusions and slots, tongue and groove, locking ring, and/or spiral grooves to screw the rear sole into the recess, all described in the context of a rear sole that is removable and/or rotatable. *See, e.g.*, *id.* at col. 6 ll. 30–46, col. 6 l. 66–col. 7 l. 14, col. 7 ll. 35–49, col. 8 ll. 13–29, col. 8 ll. 41–67, col. 9 l. 45–col. 10 l. 4. In sum, given the patent's disparagement of conventional fixed rear sole shoes which suffer from rear sole wear, its characterization of the invention as a removable and/or rotatable rear sole, and its uniform, lengthy disclosure of such rear soles, we agree with the district court's construction of "rear sole secured" to mean "rear sole selectively or permanently fastened, but not permanently fixed into position."[1] *Asics* at 18–19 (explaining further that this construction reflects the core invention of overcoming the problem "of the rear

---

[1]    As the district court noted, this construction is consistent with our construction of "secured" for the related '300 patent in *Akeva I*. *Asics* at 22–24.

sole wearing out faster than the rest of the shoe" by providing "rear soles that can be rotated or replaced").

Akeva argues that the '126 patent specification did not disclaim conventional fixed rear soles because, in its view, the specification discloses two distinct inventions that do not depend on each other:  (1) rotatable and/or detachable rear soles and (2) a flexible plate in the midsole.  We disagree, because the specification consistently describes the invention as a shoe with a detachable or rotatable rear sole that may additionally have a flexible plate (e.g., graphite insert).  As the Abstract makes clear, the invention is "[a] shoe [that] includes a heel support for receiving a rotatable and replaceable rear sole to provide longer wear.  The shoe *may also* include a graphite insert."  '126 patent Abstract (emphasis added).  Moreover, when the Summary of the Invention refers to a "graphite insert," it is combined with a "rear sole receivable in the recess of the heel support," not a conventional fixed rear sole.  *Id.* at col. 3, ll. 34–42.  Akeva argues that Figure 28's depiction of one possible configuration of the graphite insert supports its view.  But Figure 28 is stated to be "an isometric view of a graphite insert for use in the shoe of the present invention," *Id.* at col. 4 ll. 48–49, and, as already explained, the disclosed invention excludes conventional fixed rear soles, as the "purpose of the invention" is to overcome rear sole wear with a shoe having a detachable or rotatable rear sole that may additionally include a graphite insert.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001) (finding that "the SciMed patents distinguish the prior art on the basis of the use of dual lumens and point out the advantages of the coaxial lumens used in the catheters that are the subjects of the SciMed patents" and that the specification included these dual lumens as part of "the present invention"); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1371 (Fed. Cir. 2003) ("[T]he '907 specification indicates that the invention is indeed exclusively directed toward flooring products including play.

Moreover, unlike the patent-at-issue in *Sunrace*, the '907 specification also distinguished the prior art on the basis of play.").

Akeva also relies on the specification's statement that "[t]he graphite insert also need not be used only in conjunction with a detachable rear sole, but can be used with permanently attached rear soles as well" as proof that the specification contemplates a flexible plate inserted into the midsole of a shoe with a conventional fixed rear sole. Appellant's Br. at 30–31; '126 patent col. 13 ll. 59–61. In *Akeva I*, we considered essentially the same statement in the '300 continuation-in-part patent specification, which stated "[t]he flexible region also need not be used only in conjunction with a detachable rear sole, but can be used with permanently attached rear soles as well." *Akeva I*, 208 F. App'x at 864–65 (quoting '300 patent col. 10 ll. 12–16). There, "when read in the context of the specification," we held that "[t]he 'permanently attached' language in the specification contemplates shoes with heels that are permanently fixed (cannot be interchanged) but are rotatable." *Id.* at 865. We find that the same is true for the "permanently attached" language in the '126 patent, when read in the context of its specification. Although the specifications of the two patents are not identical, the '126 patent, as we observed above, describes an embodiment having a rear sole that is rotatable but not removable, using language virtually identical to a passage in the '300 patent we cited and relied on in *Akeva I*. *Compare* '126 patent, col. 8 ll. 30–40, *with* '300 patent, col. 7 ll. 35–42; *see also* '126 patent, col. 3, ll. 29–30 (describing "a rear sole detachably secured or rotatably mounted to the heel support"). Accordingly, when read in the context of the '126 patent specification, we agree with the district court that the "permanently attached rear soles" discussed are rotatable (but not removable) rear soles. At no point in the '126 patent specification is a shoe with a conventional fixed rear sole contemplated as part of the invention.

Akeva also argues that the doctrine of claim differentiation supports its position. We disagree. Independent claim 25 requires the rear sole to be "secured." '126 patent at claim 25. Claims 33 and 40 both depend from claim 25 and include a rear sole "detachably secured" and a "means for detachably securing the rear sole," respectively. *Id.* at claims 33, 40. Akeva argues that claim 25 must be broader than these dependent claims and therefore must include a conventional fixed rear sole. But claim 25 encompasses both non-detachable, rotatable rear soles as well as detachable rear soles under the district court's construction, with which we agree. Akeva's claim differentiation argument therefore is inapposite.

In view of the foregoing, we agree with the district court that the '126 specification clearly disclaims shoes with conventional fixed rear soles. Accordingly, we agree with the district court's ruling that the Defendants' accused products do not infringe the '126 patent.

## II.

We now turn to whether the Continuation Patents may properly claim priority to the '126 patent. Akeva does not dispute that the asserted claims of the Continuation Patents are invalid if they are not entitled to the '126 patent's priority date. To claim priority to a patent earlier in the priority chain, our case law emphasizes that there must be a continuity of disclosure. *Hollmer v. Harari*, 681 F.3d 1351, 1355 (Fed. Cir. 2012); *Zenon Envtl., Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1378 (Fed. Cir. 2007); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571–72 (Fed. Cir. 1997). Thus, in this case, to be entitled to claim priority to the '126 patent, there must be adequate written description support for the Continuation Patent claims through the chain of applications leading back to the '126 patent, which here includes the '300 patent. The disclaimer in the '300 patent specifically excluded an athletic shoe with the conventional fixed rear sole and midsole insert from the patent's scope,

breaking any continuity of disclosure for that embodiment. As a result, the Continuation Patents cannot reach through the '300 patent to claim an earlier priority date for claims directed to a shoe having a conventional fixed rear sole.

As the district court correctly concluded, the fundamental problem with Akeva's priority argument is that the '300 patent disclaims and therefore does not disclose shoes with conventional fixed rear soles. *Akeva I*, 208 F. App'x at 865. Due to this break in the priority chain, the asserted claims of the Continuation Patents cannot claim priority to the '126 patent for a shoe having a conventional fixed rear sole. *Hollmer*, 681 F.3d at 1355; *Zenon*, 506 F.3d at 1378; *Lockwood*, 107 F.3d at 1571–72. And as explained above, because we agree with the district court that the '126 patent likewise disclaims and therefore does not disclose shoes with a conventional fixed rear sole, Akeva's priority claim argument fails for this reason as well.

Akeva's argument that the Continuation Patents rescinded the prior disclaimers and that the Continuation Patents should thus be able to claim priority to the '126 patent is not persuasive. Akeva has provided no case law support for its position that a disclaimer in the specification can be later rescinded and undone by amendments to a subsequent continuation specification without this new, expanded scope of the disclosure constituting new matter in that subsequent continuation.

Akeva would have us look to *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1317–18 (Fed. Cir. 2007), and *Luv N' Care, Ltd. v. Jackel International Limited*, 115 F. Supp. 3d 808, 819–21 (E.D. Tex. 2015), as examples of disclaimers of claim scope that were successfully rescinded in a later-filed continuation patent. But those cases involve disclaimers regarding the claim scope made *during prosecution*, unlike the specification disclaimer in the present case. In those cases, the written description support for the asserted claims always existed in the prior patents, and the

patent owner then in the subsequent application filed a statement explicitly rescinding that prior-made prosecution disclaimer. *Hakim*, 479 F.3d at 1317–18.

A disclaimer in the specification, on the other hand, specifically excludes subject matter from the invention possessed by the patentee. Moreover, we have previously explained that removing limitations often broadens the description. *Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1338 (Fed. Cir. 2010). In this case, for example, rescinding the specification disclaimer would bring an entirely new embodiment into the Continuation Patents that had originally been excluded from the '300 patent's disclosure. Such an embodiment would be "classical new matter" and is not within the scope of the invention as disclosed in the prior patent. *Id.* We therefore disagree with Akeva that it could rescind the specification disclaimer in the '300 patent by amending the specifications of the subsequent continuation patents, thereby adding new matter to the Continuation Patents, and then reach through that patent to the '126 patent for priority. Moreover, given our holding as to the specification disclaimer in the '126 patent, the asserted claims of the Continuation Patents cannot claim priority to the '126 patent for the separate, additional reason that the '126 patent disclaimed and thus does not disclose a shoe having a conventional fixed rear sole. The asserted claims of the Continuation Patents thus are not entitled to the '126 patent's priority date for that reason as well.[2]

---

[2] Because we affirm the district court's invalidity ruling as to the Continuation Patents, we need not address the Defendants' alternative argument that the Continuation Patents are invalid because Akeva impermissibly added new matter to their specifications, and thus lacked adequate support for the asserted claims at the time those continuation applications were filed. *See* 35 U.S.C. 132(a)

We agree with the district court that the '300 patent broke the chain of priority for the asserted claims of the Continuation Patents and that the Continuation Patents cannot claim priority to the '126 patent. As a result, because the parties have admitted that the accused Nike shoe is prior art if the Continuation Patents cannot claim priority to the '126 patent, *Asics* at 35–36, the asserted claims of the Continuation Patents are invalid under the on-sale bar. *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366–67 (Fed. Cir. 2000).

## CONCLUSION

We hold that the '126 patent disclaimed a shoe with a conventional fixed rear sole. As a result, such a shoe is not within the scope of claim 25 of the '126 patent. Further, the Continuation Patents cannot claim priority to the '126 patent for claims covering a conventional fixed rear sole because the chain of priority was broken by the '300 patent. Thus, the asserted claims of the Continuation Patents are anticipated. We have considered Akeva's remaining arguments and find them unpersuasive. The district court's grant of summary judgment is

## **AFFIRMED**

---

("No amendment shall introduce new matter into the disclosure of the invention.").